O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order GRANTING in part and DENYING in part Defendants' Motion for Summary Judgment**

August 13, 2008, the Court heard arguments on Defendants' Motion for Summary Judgment. After considering the moving and opposing papers, the Court GRANTS in part and DENIES in part Defendants' Motion.

I.     FACTUAL BACKGROUND

Plaintiff in this action is Joel Sario Reyes ("Plaintiff"), an 81-year old Filipino man who is "hard of hearing, has slurred speech and is in poor general health," and is purportedly "'an individual with a disability' with the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act." (FAC, ¶¶ 3, 7.) Defendants are the County of Los Angeles ("County"), the Los Angeles, County Sheriff's Department, and Sheriff Leroy Baca, Captain Todd Rogers ("Captain Rogers") and Deputies Frank Lobato ("Deputy Lobato") and Dennis Conway ("Deputy Conway") (collectively "Deputies"), in their individual and official capacities. Plaintiff's suit is based on events that transpired on August 2, 2007 in the City of Carson.

A.     August 2, 2007 Citizen's Arrest

On the morning of August 2, 2007, Plaintiff walked from his home to the Carson Farmers' Market ("Farmers' Market") to pick up some religious bracelets he had ordered three weeks previously from jewelry vendor Sylvia Flowers ("Flowers"). (Reyes Dec., ¶ 6.) Flowers informed Plaintiff that his bracelets would not be ready for another two weeks or a month, and Plaintiff got mad, raised his voice and said, "Hell, no. I cannot wait that long. Just give me my

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

money." (Reyes Depo. at 14:8-15:2.)  As Flowers was handing the money to Plaintiff, she was mad and shouted, "From now on, you cannot buy anything that I sell here." (Id. at 14:13-16.)

At approximately 11:00 a.m., Deputy Lobato, a 19-year veteran of the Sheriff's Department, and Deputy Conway, a patrol deputy who was training with Deputy Lobato, received a call from dispatch regarding a disturbance of peace at the Farmer's Market.  (UF, ¶¶ 1, 3-4, 22.)  Dispatch conveyed to the Deputies that the suspect, *i.e.* Plaintiff, had caused a disturbance of peace at the Farmers' Market, and that witnesses were at the scene of the incident. (UF, ¶ 23.)  The Deputies arrived at the scene shortly thereafter, and Ilalio Faatiligia ("Faatiligia"), a Farmers' Market security staff member, requested that the Deputies help him effect a citizen's arrest.  (UF, ¶ 40.)

The Deputies spoke to witnesses, including Flowers, Faatiligia and Jenice DeGuzman ("DeGuzman"), a Farmers' Market event coordinator.  (UF, ¶¶ 25-26.)  These witnesses told the Deputies that Plaintiff had previously visited Flowers' booth on several occasions, yelled profanities at her, slammed his fist on her table, and thrown objects at her.  (UF, ¶¶ 27-28, 39.) The witnesses described the incident earlier in the day, explaining that Plaintiff had angrily screamed profanities at Flowers in the presence of patrons and children, and had repeatedly slammed his fists on her table during his outbursts of rage, causing Flowers to appear scared. (UF, ¶¶ 29-30.)  When Faatiligia arrived at Flowers' booth, he heard Plaintiff yelling profanities in a fit of rage and engaging in disorderly conduct in the presence of patrons and children.  (UF, ¶ 33.)  The witnesses told Deputies Lobato and Conway that Faatiligia asked Plaintiff to leave the Farmers' Market, at which point Plaintiff assaulted and continued screaming profanities at Faatiligia.  (UF, ¶ 35.)  According to the witnesses, Plaintiff hurriedly left the Farmers' market when Faatiligia called the Sheriff's Department to request assistance in placing Plaintiff under citizen's arrest.  (UF, ¶¶ 36, 40.)

After speaking to the witnesses, the Deputies and DeGuzman drove around the area looking for Plaintiff, but were unable to locate him.  (UF, ¶ 41.)  When they returned to the Farmers' Market, DeGuzman saw Plaintiff standing on a grassy knoll approximately 40-50 yards across from the Farmers' market, and identified him to the Deputies.  (UF, ¶¶ 42-43.)  The Deputies pulled up to Plaintiff in their squad car and approached Plaintiff.  (UF, ¶ 44.)  The parties dispute what occurred next.

> ### 1.   *Plaintiff's Version*

According to Plaintiff, Plaintiff noticed that the Deputies were trying to talk to him, so he

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

pointed to his ear to signal he has a hearing problem. (Reyes Dec., ¶ 10.) Deputy Lobato motioned with his hands the shape of a rectangle, which Plaintiff understood to mean his ID. (Id.) Plaintiff showed his ID to Deputy Lobato, and the deputy grabbed it, examined it, and without providing any explanation to Plaintiff, placed the ID inside his shirt pocket. (Id.) Plaintiff thought this conduct was highly improper and tried to grab the ID from Deputy Lobato's hand. (Id.) Deputy Lobato grabbed Plaintiff's arms, twisted them behind his back, and both Deputies forcefully shoved his face into the ground. (Id., ¶ 11.) The paramedics came and placed Plaintiff on a gurney. (Id., ¶ 12.) However, the paramedics later took Plaintiff out of the gurney and told him the Deputies would take him to the hospital in their squad car. (Id.) On the way to the hospital, the Deputies were laughing and appeared to be making fun of what they did to Plaintiff. (Id., ¶ 13.) Although Plaintiff complained of pain in his right wrist and asked the Deputies to loosen the handcuffs, the Deputies ignored Plaintiff. (Id.)

On arrival to the hospital, the Deputies forcefully pulled Plaintiff from the car. (Id., ¶ 14.) Plaintiff told the doctor of the pain in his right wrist, but the doctor treated him only for the wound on his forehead and did not look at his wrist. (Id.) After the exam, the Deputies tried to reapply the handcuffs to Plaintiff, but Plaintiff cried out in pain. (Id.) The doctor then examined and took x-rays of Plaintiff's right wrist and arm. (Id.) The trip to the hospital took about three to four hours. (Reyes Depo. at 59:9-10.)

Thereafter, the Deputies took Plaintiff back to the station house, where he was interviewed by Sheriff's Department Internal Affairs Bureau, Sergeant Marshall Baird ("Sergeant Baird"). (Id., ¶ 15.) Plaintiff was having problems hearing Sergeant Baird. (Id.) Sergeant Baird called Deputy Froilan Dinco ("Deputy Dinco"), a Tagalog translator, to help him interview Plaintiff. (Id.) Deputy Dinco repeatedly asked Plaintiff if he was drunk, and Plaintiff told him that he does not drink alcohol. (Id.) The Sheriff's Department kept Plaintiff in a holding cell for the night, and released him the next day. (Id., ¶¶ 15-16.) Plaintiff went to see his primary physician, at which point Plaintiff learned that his right wrist was fractured. (Id., ¶ 18.)

### 2. *Defendant's Version*

In Defendants version of events, as the Deputies approached Plaintiff on the grassy knoll, Plaintiff became agitated and irritated. (UF, ¶ 46.) After some verbal exchange, Deputy Lobato obtained Plaintiff's name and identification from Plaintiff's drivers' license, which he clipped under his pen on his uniform shirt pocket. (UF, ¶¶ 49-50.) In less than 90 seconds, Plaintiff grabbed at the chest area of Deputy Lobato's uniform. (UF, ¶ 51.) Plaintiff successfully

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

grabbed a pencil and radio microphone cord from Deputy Lobato's uniform, and began swinging the microphone. (Conway Dec., ¶ 12.) Simultaneously, Plaintiff was holding the pencil in his other hand and wielding it in a stabbing motion. (Id.) Deputy Lobato felt that his safety was endangered because of Plaintiff's assault. (UF, ¶ 53.) Despite this and taking into consideration that Plaintiff was an older man, Deputy Lobato opted not to use his weapons of force against Plaintiff and instead tried to verbally get Plaintiff to calm down, repeatedly saying, "We don't want to hurt you, we don't want to hurt you." (UF, ¶¶ 48, 58.) After tolerating Plaintiff's assault for 30-45 seconds, Deputy Lobato employed a takedown maneuver, consistent with his peace officer training, to guide Plaintiff onto the grass. (UF, ¶ 60.) As he handcuffed Plaintiff, Deputy Lobato explained that he did not want to use force, but he had no choice because Plaintiff was not listening to him. (UF, ¶ 63.) Given that Plaintiff had sustained a minor abrasion on his forehead, the Deputies called paramedics to examine and provide any necessary medical treatment. (UF, ¶ 65.) The paramedics told the Deputies that Plaintiff was medically cleared to be booked, but out of an abundance of caution, the Deputies took Plaintiff to the hospital for further examination. (UF, ¶¶ 67-68.)

After examining Plaintiff at the hospital, Dr. Paul Randau gave medical clearance to book Plaintiff. (UF, ¶ 69.) While he was being handcuffed, Plaintiff told the Deputies, for the first time, that his right wrist was in pain. (UF, ¶ 70.) Dr. Randau examined Plaintiff again, determined that his right wrist was fractured, and had a soft cast and sling applied. (UF, ¶¶ 71-72.) The Deputies then handcuffed Plaintiff's left arm but allowed the right arm to remain in the sling as they transported Plaintiff to the Carson Station for booking. (UF, ¶ 73.)

During the booking process, Sergeant Baird, with the aid of Deputy Dinco, interviewed Plaintiff on videotape. (UF, ¶ 76.) Plaintiff twice demonstrated how he tried to grab his identification back from Deputy Lobato by re-enacting a lunging motion toward Deputy Dinco's chest. (UF, ¶ 84.)

B.    <u>Carson Sheriff's Department Policy and Custom</u>

In August 2007, the Sheriff's Department had policies and practices of only using reasonable force in effecting the arrest of a suspect. (UF, ¶ 88.) During this same time period, the Sheriff's Department had policies and practices of making arrests only where there was probable cause to believe that crimes had occurred. (UF, ¶ 89.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

C.   <u>Plaintiff's Complaints</u>

On August 22, 2007, Plaintiff filed a tort claim against the County pursuant to Cal. Gov't Code § 910.  (Defendant's RJN, Ex. A.)[1]  Five days later, on August 27, 2007, Plaintiff filed a civil rights complaint in federal court.  In January 2008, Plaintiff filed a First Amended Complaint ("FAC") alleging the following violations of state and federal law: (1) violation of Title II of the American with Disabilities Act ("Title II" or "ADA"), 42 U.S.C. § 12100, *et seq.*, against the County and the Sheriff's Department; (2) violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, against the County and the Sheriff's Department; (3) violation of Cal. Gov't Code § 11135, against the County and the Sheriff's Department; (4) violation of Fourth Amendment, 42 U.S.C. § 1983, against all Defendants; (5) Negligence, against the County, the Sheriff's Department, and Baca; (6) Battery, against the County, the Sheriff's Department, and Deputies Lobato and Conway; and (7) False Arrest, against the County, the Sheriff's Department, and Deputies Lobato and Conway. Defendants now move for summary judgment on all seven causes of action.

II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial.  *See id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  *See Anderson*, 477 U.S. at 250-51.

---

[1]Defendants have requested that the Court take judicial notice of this official documents, pursuant to Rule 201 of the Federal Rules of Evidence.  Plaintiff has not objected to Defendants' request, which the Court grants.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence in evidence, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e)(1).

III.   DISCUSSION

    A.   Failure to Comply with Discovery Obligations

As a preliminary matter, Defendants argue that they are entitled to summary judgment because Plaintiff did not timely respond to Defendants' comprehensive set of request for admissions, pursuant to Fed. R. Civ. P. 36, and so the matters are deemed admitted. (Lee Dec., ¶ 9. Ex. 16.) Plaintiff contends that Defendants did not respond because Defendants served the request beyond the discovery cutoff date. (Opp'n at 5.) The Court will not adjudicate discovery matters at this stage of the litigation, and instead proceeds to address the merits of Defendants' summary judgment motion.

    B.   Counts 1 (ADA) and Count 2 (Section 504)

Defendants seek summary judgment on Plaintiff's ADA and Section 504 claims in Counts 1 and 2. Plaintiff alleges that the County and Sheriff's Department violated the ADA and Section 504 by failing to provide him with: (a) a pen and paper at the scene of the investigation, (b) a written note informing him of the reason for his arrest and his Miranda rights; (c) pen and paper, a written note, and/or qualified interpreter during his medical treatment, booking, and while in custody; and (d) a Telecommunication Device for the Deaf ("TDD") or equally effective telecommunication while held in custody. (FAC, ¶¶ 27.)

Title II of the ADA provides:

. . . [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *see* 42 U.S.C. § 12134(b), which provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794.[2]

Given the similar substance of the ADA and Section 504, this Court will address the elements of the two claims together. "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). Under Section 504, a plaintiff must show: (1) he is an "individual with a disability"; (2) he is "otherwise qualified" to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *See* 29 U.S.C. § 794; *Weinrich v. L.A. County Metro Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997) (citations omitted). In addition, "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove ***intentional discrimination*** on the part of the defendant." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001) (emphasis added). To establish intentional discrimination under the ADA, the plaintiff must show defendants acted with "***deliberate indifference***." *Id.* (emphasis added). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

Defendants attack the second prong of the ADA analysis and third prong of the Section 504 analysis. They contend that his ADA and Section 504 claim necessarily fail because Plaintiff has not specifically alleged what County "service, program, or activity" he could not participate due to his purported disability. Moreover, Defendants argue that the arrest in question was not a type of "service, program or activity" covered by the ADA.

---

[2]The parties do not dispute that the County and Sheriff's Department are public entities within the meaning of the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12131(1)(B).

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|----------|----------------------|------|-----------------|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

While the Ninth Circuit has not specifically addressed whether an arrest fits within the parameters of the ADA, in *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997), the court in dicta hinted that an arrest is not subject to the ADA: "We agree with the Seventh Circuit's conclusion that although '[i]ncarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access, . . . there is no doubt that an educational program is a program, and when it is provided by and in a state prison it is a program of a public entity'." *Id.* (citing *Crawford v. Indiana Dep't of Corrections,* 115 F.3d 481, 483 (7th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998)) (internal citation omitted). Numerous circuit and district courts that have answered the question have come to different conclusions.  For example, the Fourth Circuit has held that a deaf plaintiff, stopped for a DUI and who alleged that the police made no attempt to effectively communicate with him, had no ADA claim.  *Rosen v. Montgomery County, Md.,* 121 F.3d 154 (4th Cir. 1997) (". . . [C]alling a drunk driving arrest a 'program or activity' of the County . . . strikes us as a stretch of the statutory language and of the underlying legislative intent.").  Similarly, in *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000), the Fifth Circuit held that "Title II does not apply to an officer's on-the-street response to reported disturbances or other similar incidents . . .  prior to the officer's securing the scene and ensuring that there is no threat to human life."  The Eight Circuit, however, has held that the ADA is applicable to the transportation of arrestees.  *See Gorman v. Bartch,* 152 F.3d 907, 912-13 (8th Cir. 1998) ("Transportation of an arrestee to the station house is thus a service of the police within the meaning of the ADA.").  And in *Calloway v. Boro of Glassboro Dept. of Police*, 89 F.Supp.2d 543, 555 (D.N.J. 2000), the district court of New Jersey ruled that station-house investigative questioning qualified as an "activity" under the ADA and Section 504, given the broad statutory definition of "activity" as including "'***all*** of the operations of-(1)(A) a department . . . of a local government.'  29 U.S.C. § 794(b) (emphasis added)."

One district court noted that "[w]hile lower courts have come to varying outcomes with respect to whether Title II applies in the context of a valid arrest, the common thread that runs through all of the decisions is that the determination is fact-specific."  *Catlett v. Jefferson County Corrections Dept.,* 2000 WL 35547524, *5 (W.D.Ky. 2000).  Relevant factors include, but are not limited to, "the defendants' knowledge of the plaintiff's condition, the presence of exigent circumstances surrounding the arrest, and the length and nature of the detention which accompanied the arrest."  *Id.*

Applying the facts of this specific case, the Court finds that Plaintiff's in-the-field arrest or examination at the hospital was not a "service," "program" or "activity" to which the ADA or Section 504 applied.  The arrest occurred outdoors pursuant to the Deputies' "on-the-street

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

response" to a reported disturbance.  Moreover, the circumstances became exigent when Plaintiff grabbed in Deputy Lobato's direction.  As for Defendants' knowledge of the Plaintiff's condition, it is not apparent from the record that the Deputies knew he was hearing disabled. Later on, when the Deputies took Plaintiff to the hospital, there is no indication that Plaintiff told either the doctor examining him or the Deputies that he could not hear.  Indeed, the audiotaped recording of the arrest indicates that Plaintiff was able to respond to many of the Deputies' questions.  (D's Decs., Ex. 5B.)

However, the Court finds that the investigative questioning at the station house *was* a "service," "program" or "activity" entitled to the protections of Title II and Section 504.  This conclusion is supported by persuasive authority suggesting that Title II and Section 504 apply when exigent circumstances have dissipated.  As mentioned earlier, the court in *Calloway* held that station-house investigative questioning qualified as an "activity" under the ADA and Section 504.  *Calloway*, 89 F.Supp.2d at 555.  In so holding, the court distinguished *Rosen*, where in the context of an in-the-field arrest, "well-established exigencies necessitate[d] certain action for the protection of the public." *Id.* (citing *Rosen*, 121 F.3d at 158-58).  The court in *Calloway* also discussed the more recent case*, Yeskey v. Commonwealth of Pa. Dep't of Corrections,* 118 F.3d 168, 172 (3d Cir. 1997), *aff'd*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), where the Third Circuit held that the provisions of the ADA and Section 504 prohibiting exclusion of disabled persons from government programs were applicable to state and local correctional facilities.  In particular, the Third Circuit noted that Congress intended the terms "program" and "activity," as used in Title II of the ADA, to be "all-encompassing." *Id.* Following *Yeskey*, the court in *Schorr v. Borough of Lemoyne,* 243 F.Supp.2d 232, 235 (M.D.Pa. 2003) similarly emphasized the breadth of Title II:

> Although to the lay reader [the language of Title II] may suggest only
> commonly available and publicly shared accommodations such as parks,
> playgrounds, and transportation, the Act in no way limits the terms
> 'services, programs, or activities' and appears to include all core functions
> of government.  Among the most basic of these functions is the lawful
> exercise of police powers, including the appropriate use of force by
> government officials acting under the color of law.

Having determined that Title II and Section 504 applied to Sergeant Baird's investigative questioning at the station house, the Court next addresses whether Plaintiff has established a prima facie case of discrimination under these Acts.  The Court finds that he has not.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

Under the third prong of the ADA and Section 504 analyses, Plaintiff must establish causation by showing that the exclusion or discrimination was by ***"reason of"*** his disability." *See* 29 U.S.C. § 794; *Lovell,* 303 F.3d at 1052 (emphasis added); *Weinrich,* 114 F.3d at 978 (emphasis added). Plaintiff contends that during the investigative questioning, Defendants should have provided him with a "pen and paper, a written note, and/or qualified interpreter," and "a Telecommunication Device for the Deaf . . .or equally effective telecommunication . . . ." (FAC, ¶ 27.) Despite these contentions, Plaintiff has failed to raise a triable issue of material fact that he was deliberately denied benefits, activities, or programs available to detainees he would otherwise qualify for because of his disability. For example, Plaintiff produced no evidence or testimony that staff at the Sheriff's Department denied him any request for a pen and paper and/or a TDD while he was in custody at the station. During his interview with Sergeant Baird with the aid of Tagalog interpreter Deputy Dinco, Plaintiff did not say anything indicating that Deputy Dinco was not qualified, or that he did not understand Deputy Dinco. While at times Deputy Dinco had to repeat his questions to Plaintiff, Plaintiff appeared able to answer the interpreter's questions. In his Opposition, Plaintiff fails to even address, much less present admissible evidence opposing any of Defendants' ADA and Section 504 arguments. Because Plaintiff raises no triable issue of fact adequate to save his statutory claims as a matter of law on the deliberate discrimination element, Defendants are entitled to summary judgment on Plaintiff's ADA and Section 504 causes of action. The Court therefore GRANTS summary judgment on the ADA and Section 504 claims against the County and Sheriff's Department.[3]

C.    Count 3 (Cal. Gov't Code § 11135)

In Count 3, Plaintiff alleges that the County and Sheriff's Department violated Cal. Gov't Code § 11135 "by unlawfully denying Plaintiff REYES the benefit of, and unlawfully subjecting Plaintiff to discrimination under, Defendants' programs and activities." (FAC, ¶ 40.)

Section 11135(a) provides:

> No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program

---

[3]At oral argument at the hearing, Plaintiff's counsel conceded that he had not established enough evidence to demonstrate either an ADA or Section 504 claim.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

or activity that is conducted, operated, or administered by the state or by
any state agency, is funded directly by the state, or receives any financial
assistance from the state.

Cal. Gov't Code § 11135(a).

Section 11135(b) states that "[w]ith respect to discrimination on the basis of disability,
programs and activities subject to subdivision (a) shall meet the protections and prohibitions
contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132),
and the federal rules and regulations adopted in implementation thereof . . . ." Cal. Gov't Code §
11135(b). For the same reasons that Defendants are entitled to summary judgment on Plaintiff's
ADA claim, they are also entitled to summary judgment on Plaintiff's § 11135 claim.
Consequently, the Court GRANTS summary judgment on the § 11135(a) claim against the
County and Sheriff's Department

    D.    <u>Count 4 (42 U.S.C. § 1983)</u>

In Count 4, Plaintiff alleges that all Defendants are liable under 42 U.S.C. § 1983,
because they violated Plaintiff's right to be secure in his home, person and effects against
unreasonable searches and seizures and not to be subjected to the use of excessive force, as
guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. (FAC,
¶ 42.)

Section 1983 creates a cause of action against any person who, acting under color of state
law, violates the constitutional rights of another person. 42 U. S.C. § 1983; *Mabe v. San
Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To
succeed on a § 1983 claim, Plaintiff must show that (1) the conduct complained of was
committed by a person acting under color of state law; and (2) the conduct deprived him of a
constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).
Claims such as this one, that law enforcement officials used excessive force in the course of
making an arrest, investigatory stop, or other "seizure" of a person, are analyzed under the
Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989).

    *1.*    *Defendants County and Sheriff's Department*

Plaintiff seeks to hold the County and the Sheriff's Department liable under § 1983 for
the actions of Deputies Lobato, Conway and Sergeant Baird. Plaintiff's claim against the

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|----------|------------------------|------|------------------|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

Sheriff's Department is in reality a claim against the County. *See, e.g., Brandon v. Holt,* 469 U.S. 464, 472, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (a department within a local government has "no greater separate identity" than the local government). Therefore, the Court DISMISSES the Sheriff's Department as a redundant defendant.

Defendants argue that Plaintiff has failed to make a § 1983 claim against the County because he has not produced sufficient admissible evidence of a widespread County practice or policy regarding false arrests and the use of excessive force. The Court agrees with Defendants. While municipalities and other local government units were intended to be included among those persons to whom § 1983 applies, a municipality may not be held liable under § 1983 simply because it employs a tortfeaser. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036 (1978). Instead, the plaintiff must identify a municipal "policy" or "custom" of constitutional violations, and show a "direct causal link" to the injury. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 1989); *Pembaur v. Cincinnati,* 475 U.S. 469, 480-481, 106 S.Ct. 1292, 1298-1299 (1986). To establish "policy or custom," a plaintiff must provide more than just proof of random acts or isolated events, and show the injury resulted from a "permanent and well-settled" practice of the local government. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824, 105 S.Ct. 2427, 2436-2437 (1985); *hompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). In addition, if the plaintiff alleges the municipality failed to properly train its employees, § 1983 liability attaches only if the inadequate training evidences a "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989).

Here, Plaintiff has failed to establish that a genuine issue of material fact regarding the existence of an official policy or custom of arresting individuals, disabled or otherwise, without the requisite probable cause. Plaintiff has also failed to show a genuine issue of material fact regarding the inadequate training of sheriff's deputies demonstrating the County's "deliberate indifference" to rights of its inhabitants.

According to Defendants' undisputed evidence, at the time of the incident, the Sheriff's Department had policies and practices of only using reasonable force in effecting the arrest of a suspect (UF, ¶ 88), and of making arrests only where there was probable cause to believe that crimes had occurred. (UF, ¶ 89.) That Plaintiff has not disputed these facts defeats Plaintiff's *Monell* claim against the County. Plaintiff nevertheless argues in his Opposition that Deputies Lobato and Conway were never questioned about the police report or how Plaintiff's right arm was injured, and that "that there was lack of direction from the top level of the department and acquiescence to unchecked discretion by low-level officers when making important decision

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

effecting the use of force of patrol officers."  (Opp'n at 8.)  Plaintiff, however, has failed to support these statements with any evidence whatsoever.  Given this, no reasonable jury could conclude that the County had a *Monell* "custom" or "policy" of violating disabled persons' constitutional rights.  Accordingly, the Court GRANTS summary judgment on the § 1983 claim against the County.

> 2.    *Defendants Sheriff Baca, Captain Rogers, Deputy Lobato and Deputy Conway*

Plaintiff also seeks to hold Sheriff Baca, Captain Rogers, Deputy Lobato and Deputy Conway, in their individual and official capacities, liable under § 1983.

When state officials are sued in their official-capacities, the suit is treated as against the state.  *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997).  "1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded."  *Butler v. Elle*, 281 F.3d 1014, 1023 fn. 8 (9th Cir. 2002).  In such suits, the real party in interest is the entity for which the official works.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  By contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law."  *Graham*, 473 U.S. at 165, 105 S.Ct. 3099.  Because a suit against Sheriff Baca, Captain Rogers, Deputy Lobato and Deputy Conway in their official capacities is the same as a suit against the County, Plaintiff's § 1983 claim against these Defendants in their official capacities is DISMISSED.  Moreover, because Plaintiff's FAC and papers lack any specific allegations with respect to Sheriff Baca's or Captain Rogers' actions in their individual capacities, Plaintiff's § 1983 claim against Sheriff Baca and Captain Rogers in their individual capacities is also DISMISSED.  This leaves Deputy Lobato and Deputy Conway as the only remaining Defendants.  The Court will address Plaintiff's § 1983 claim against these Deputies in their individual capacities.

> (a)    *Unreasonable Search and Seizure*

The Fourth Amendment protects persons against "unreasonable searches and seizures."  U.S. Const. amend. IV.  The "reasonableness" and hence constitutionality of a warrantless arrest is determined by the existence of probable cause.  *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1989).  Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  *Maryland v.*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

*Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795 (2003). A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a "fair probability" that the suspect has committed a crime. *See Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2002); *United States v. Valencia-Amezcua,* 278 F.3d 901, 906 (9th Cir. 2002). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536 (2001). Furthermore, "the arresting officer's state of mind (except for the facts that he knows), is irrelevant to the existence of probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 594 (2004).

Here, the undisputed facts establish that the Deputies Lobato and Conway had probable cause to arrest Plaintiff. Several witnesses provided the Deputies with information leading the Deputies to reasonably believe that Plaintiff had committed at least two crimes - violation of the City of Carson Municipal Code § 4100 (disorderly conduct) and Cal. Penal Code § 242 (assault). Witnesses informed the Deputies that Plaintiff had assaulted Faatiligia, the security guard, when Faatiligia asked Plaintiff to leave the Farmers' Market. (UF, ¶ 35.) Witnesses also told the Deputies that Plaintiff had been yelling profanities in a fit of rage, engaging in disorderly conduct, slamming his fists on Flowers' table at the jewelry booth, and throwing objects at Flowers. (UF, ¶¶ 30, 33.) Viewed objectively, the Court finds that the facts available to Deputies Lobato and Conway established probable cause to arrest Plaintiff.

### (b)    Excessive Force Claim

Excessive force claims "are analyzed under the objective reasonableness standard of the Fourth Amendment." *Blanford v. Sacramento County,* 406 F.3d 1110, 1115 (9th Cir. 2005). The test of reasonableness is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. at 397. This reasonableness inquiry should reflect a balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests [and] the countervailing governmental interests at stake." *Id.* at 396-397. Additional factors that bear on reasonableness include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Officers . . . . need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Scott v. Henrich,* 39 F.3d 912,

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

915 (9th Cir. 1994).

Here, there is no dispute that Plaintiff tried to grab for his identification card from Deputy Lobato. In his videotaped interview, Plaintiff states that "[Deputy Lobato] was going to pocket [his ID] so I grabbed it this way . . ." (D's Declarations, Ex. 6B at 14:34.) Despite this, the record nevertheless contains factual disputes with regard to the amount of force used on Plaintiff to preclude summary judgment on this claim.

According to Deputy Lobato, he "felt his safety was endangered as a result of Plaintiffs's assault" when Plaintiff grabbed in his direction trying to get his ID back. (UF,¶ 53.) Deputy Lobato insists that he had other methods of force available for his use against Plaintiff, but decided against using these methods. (UF, ¶ 56.) Deputy Lobato further stated that he tolerated Plaintiff's physical assault on him 30 to 45 seconds before he "employed a takedown maneuver consistent with his peace officer training: using his left hand to hold Plaintiff's left wrist, using his right hand to hold Plaintiff's left triceps, and using a sweeping gesture to guide Plaintiff down to the grass." (UF, ¶ 60.) Deputy Conway testified that Lobato tried to avoid Plaintiff's head hitting the ground by the control takedown he used. (D's Decs., Ex. 11 "Conway Depo." at 21:25-22:8.) Deputy Conway also testified that Plaintiff did not tell him, Deputy Lobato or any other person present at the scene that his wrist hurt. (Conway Depo. at 32:7-13.)

Plaintiff, on the other hand, testified that after he landed on the ground, he fell unconscious for about ten seconds. (Reyes Depo. at 49:3-9.) Plaintiff stated that his "forehead became bloody because I was -- I was pushed to the ground" (Id. at 129:21-23) and that he was "writhing in pain." (Id. at 49:11-16.) According to Plaintiff, even though he told the paramedics that is right wrist was very painful, he was told to get out of the paramedics' gurney and ride in the Deputies' squad car, where the Deputies "did not pay any attention" to Plaintiff's cries of pain or requests that they remove or loosed the handcuffs from his right wrist. (Reyes Dec., ¶¶ 12-13.)

Although Plaintiff's evidence is slim, he has nonetheless met his burden and shown that a triable issue of fact exists as to whether Deputies Lobato and Conway used excessive force against Plaintiff when they employed a takedown maneuver causing him to sustain a

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|----------|----------------------|------|------------------|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

wound on the forehead, and possibly fracture his wrist.[4]  It is undisputed that as a result of being taken to the ground, Plaintiff sustained an abrasion on his forehead.  (UF, ¶ 64.)  It is also undisputed that Dr. Randau at the hospital diagnosed Plaintiff with a fractured right wrist.  (UF, ¶ 71.)  Moreover, there is a disputed issue of material fact concerning whether the Deputies used only enough force to "guide" Plaintiff down to the ground onto the grass, or whether they used an unreasonable amount of force causing a bloody wound on Plaintiff's forehead and a fractured right wrist.  Based on the evidence in the record and given Plaintiff's 5'4" stature as well as his age of 80-years, a genuine issue exists as to whether the amount of force the Deputies used on Plaintiff was excessive and unreasonable.  At the very least, the evidence in this case points more than one way.  Accordingly, summary judgment on Plaintiff's excessive force § 1983 claim against Deputies Lobato and Conway is DENIED.

> *(c)     Qualified Immunity*

Alternatively, Deputies Lobato and Conway assert they are entitled to qualified immunity for Plaintiff's § 1983 claims.  In determining whether Defendants enjoy qualified immunity, the Court must engage in a two-step inquiry.  First, the Court asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).  If the Court answers this question in the affirmative, it then proceeds to determine "whether the right was clearly established."  *Id.*  This standard, in turn, requires a two-part analysis: (1) was the law governing the official's conduct clearly established; and (2) under that law, could a reasonable official have believed the conduct was lawful.  *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir. 1993).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  If the law does not put an officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id.*  In addition, "Summary judgment on qualified immunity is not proper unless the evidence

---

[4]Defendants argue that the undisputed medical testimony by Dr. Keith Liberman establishes that the fracture in Plaintiff's right wrist could not have occurred from a grabbing or twisting of arm as claimed by Plaintiff.  (Reply at 9.)  Because Defendants submitted Dr. Liberman's declaration with their Reply, and Plaintiff had no opportunity to dispute this evidence, the Court does not consider it.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

permits only one reasonable conclusion. Where 'conflicting inferences may be drawn from the facts, the case must go to the jury.'" *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1087 (9th Cir. 2000) (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)).

Under the first prong of the *Saucier* analysis, as discussed in the previous section, on a favorable view of Plaintiff's submissions, Plaintiff could make out a Fourth Amendment claim based on excessive force.  With respect to the second prong, at the time of the events in question, the law was clearly established: there is a clear constitutional prohibition against the use of excessive force in effecting an arrest.  *Graham,* 490 U.S. at 394.  Moreover, there are issues of fact regarding whether the Deputies' use of force in taking Plaintiff to the ground was excessive and in violation of the Fourth Amendment.  Under Defendants' version of facts, the Deputies did not violate the Fourth Amendment or use excessive force, but under Plaintiff's version of facts, the Deputies did.  *See Meredith v. Erath,* 342 F.3d 1057, 1061-63 (9th Cir. 2003).  Given that "conflicting inferences may be drawn from the facts," *LaLonde,* 204 F.3d at 959, summary judgment on qualified immunity is not proper.  Accordingly, the Court DENIES summary judgment on Plaintiff's § 1983 claim based on excessive force against Deputies Lobato and Conway.

>    E.    Count 5 (negligence), Count 6 (battery) and Count 7 (False Arrest)

>        1.    *Tort Claims Act*

Defendants seeks summary judgment on Plaintiff's state law claims for failure to comply with the California Tort Claims Act ("Tort Claims Act"), Cal. Govt. Code § 810, *et seq.*  Under the Tort Claims Act, a plaintiff may not maintain an action for money or damages against a public entity unless first a written claim has been presented to the public entity and rejected in whole or in part.  Cal. Gov't Code §§ 905, 905.2, 945.4.  Failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.  *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1245 (2004).  A plaintiff must allege either compliance with this procedure or circumstances excusing compliance in the complaint.  *Id.*  Pursuant to § 912.4, the board shall act on a claim within 45 days after it has been presented.  Cal. Gov't Code § 912.4.  If the board fails or refuses to act upon the claim within those 45 days, the claim is deemed rejected by the board.  Id.

Plaintiff filed the instant lawsuit on August 27, 2007, just five days after he filed a tort claim with the County of Los Angeles pursuant to Cal. Gov't Code § 910.  (D's RJN, Ex. A.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|----------|------------------------|------|------------------|
| Title    | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

Plaintiff did not wait the requisite 45-days before filing his state law tort claims, which formerly, would have made the claims demurrable for failure to state a cause of action. *Wiersma v. City of Long Beach,* 41 Cal.App.2d 8, 12 (1940). Currently, however, courts have taken the more liberal view that prematurely filing the complaint is not fatal as long as plaintiff takes steps to see that the claim is later presented and rejected. *Bahten v. County of Merced,* 59 Cal.App.3d 101, 112 (1976), *disapproved in part on other grounds in Bodde,* 32 Cal.4th 1234, 1244 (2004); *Cory v. City of Huntington Beach*, 43 Cal.App.3d 131, 136 (1974); *but see Williams v. Horvath*, 16 Cal.3d 834, 838 (1976). In line with the more current view, the Court finds that Plaintiff's premature filing of his complaint does not, as a matter of law, bar his state law tort claims. However, as discussed below, Plaintiff's state law negligence and false arrest claims are barred for other reasons.

> ### 2.    Negligence

Plaintiff seeks to hold the County liable for negligence.[5]  However, a public entity like the County is not liable for an injury arising out of an act or omission of the public entity or its employees *except* as provided by statute. Cal. Gov't Code, § 815 (a); *Cerna v. City of Oakland,* 161 Cal.App.4th 1340, 1346-47, 75 Cal.Rptr.3d 168 (2008). Because Plaintiff has failed to identify a statute that provides for direct liability against the County, summary judgment in favor the County on a direct liability negligence theory is appropriate. *See Munoz v. City of Union City,* 120 Cal.App.4th 1077, 1112-13, 16 Cal.Rptr.3d 521 (2004). Furthermore, although a public entity may be held vicariously liable for negligent conduct by an employee that was done in the course and scope of his employment, this is not the case if the employee is immune from liability. Cal. Gov't Code, § 815.2. Here, Deputies Conway and Lobato are entitled to discretionary immunity pursuant to § 820.2.[6]  Therefore, summary

---

[5]Although Plaintiff also named the Sheriff's Department and Baca in his negligence claim, the Court has dismissed both these defendants. Therefore, the Court only addresses this claim as to the County.

[6]Cal. Gov't Code § 820.2 states, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

judgment is appropriate on a vicarious liability negligence claim.

Accordingly, the Court GRANTS Defendants' summary judgment motion on Plaintiff's negligence claim.

### 3. Battery

Defendants next seek summary judgment on Plaintiff's battery claim against the County and Deputies Lobato and Conway. Battery is a state law tort counterpart to a 42 U.S.C. § 1983 excessive force claim. *See Munoz v. City of Union City,* 120 Cal.App.4th 1077, 1102 n. 6, 16 Cal.Rptr.3d 521 (2004); *Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1274, 74 Cal.Rptr.2d 614 (1998). Under California law, the elements of a battery claim are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff. *Tekle ex rel. Tekle v. U.S.,* 457 F.3d 1088, 1102 (9th Cir. 2006) (citing *Cole v. Doe 1 thru 2 Officers of Emeryville Police Dep't,* 387 F.Supp.2d 1084, 1101 (N.D.Cal 2005)). In a battery claim against a police officer, Plaintiff must prove the officer used unreasonable force. *Munoz v. City of Union City,* 120 Cal.App.4th 1077, 16 Cal.Rptr.3d 521 (2004), *opinion modified on denial of reh'g, Munoz v. City of Union City*, 2004 WL 1834273 (2004); *Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1272-73, 74 Cal.Rptr.2d 614 (1998). As with a § 1983 excessive force claim, battery claims based on a police officers' use of excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment. *Graham,* 490 U.S. at 395 (1989).

Defendants contend that a police officer under Cal. Penal Code § 835(a) may use "reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." Cal. Penal Code § 835(a). Despite this, as discussed with respect to Plaintiff's § 1983 excessive force claim, Plaintiff has established a triable issue of fact as to whether the Deputies' use of force was reasonable. Moreover, under § 815.2, a public entity such as the County may be held liable for the acts of its employees. Cal. Penal Code § 815.2. Therefore, with respect the battery claim, Defendants' motion for summary judgment against the County and the Deputies is DENIED.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

### 3.    *False Arrest*

Finally, Defendants provide two grounds for seeking summary judgment on the false arrest cause of action against the County and Deputies Lobato and Conway.  First, Cal. Penal Code § 847(b)(3) grants immunity to officers for claims of false arrest when the arrest is made pursuant to a citizen's arrest under Cal. Penal Code § 837.  Second, Cal. Penal Code § 847(b)(1) grants immunity to officers for claims for false arrest if the officers had "reasonable cause to believe that the arrest was lawful." The Court finds that both grounds preclude Plaintiff's false arrest claim.

The County and the Deputies are immune for liability under § 847(b)(3), which states that officers will not be liable for false arrest or false imprisonment if the arrest was made pursuant to § 837, which allows a private citizen to make an arrest for a misdemeanor committed in his or her presence.  Cal. Penal Code §§  837, 847(b)(3).  In this case, Faatiligia made a citizen's arrest of Plaintiff based on the claim that Plaintiff assaulted him and caused a public disturbance of the peace.  The County and the Deputies are also immune for liability under § 847(b)(1) since they had probable cause to arrest Plaintiff.  The standard of "reasonable cause" for an officer effecting an arrest is lower than that of "probable cause." *O'Toole v. Superior Court,* 140 Cal.App.4th 488, 511 (2006).  Accordingly, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's false arrest claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment.  The Court GRANTS summary judgment as to Counts 1, 2, 3, 5, and 7.  The Court DENIES summary judgment as to two claims: Count 4 - Plaintiff's § 1983 claim based on excessive force in violation of the Fourth Amendment, against Defendants Deputy Lobato and Deputy Conway, in their individual capacities; and Count ) - Plaintiff's state law battery claim against the County and Deputy Lobato and Deputy Conway.

IT IS SO ORDERED.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-5586 PSG (JWJx) | Date | August 18, 2008 |
|---|---|---|---|
| Title | Joel Sario Reyes v. County of Los Angeles, *et al.* | | |

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

_____ : _____

Initials of Preparer          AB for WH

 

 

 

 

 

